UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

YOUNG FOCH,

    **Plaintiff,**

v.                            4:13cv92

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    **Defendant.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Young Suk Foch ("Foch") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act. Specifically, Foch claims the ALJ decision to deny disability benefits is not supported by substantial evidence, because it incorrectly established her residual functional capacity ("RFC") and failed to properly characterize her past relevant work. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this report recommends that the final decision of the Commissioner be affirmed.

1

## I. PROCEDURAL BACKGROUND

Foch filed an application for DIB, alleging disability beginning April 13, 2010.[1] (R. 32). The Commissioner denied her application initially (R. 73), and upon reconsideration. (R. 80). Foch requested an administrative hearing, which was conducted in Norfolk, Virginia on December 22, 2011. (R. 29).

An Administrative Law Judge ("ALJ") concluded that Foch was not disabled within the meaning of the Social Security Act, and denied her claim for benefits. (R. 22). The Appeals Council denied review of the ALJ's decision (R. 1), thereby making the ALJ's decision the final decision of the Commissioner. Foch then filed this action seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Born July 1, 1951, Foch is a 5'1" 110-pound female with an 8th grade education which she received in South Korea, prior to her immigration to the United States. (R. 33, 48, and 60). Foch works as a housekeeper for a resort.[2] (R. 35). She has been similarly employed since 1978, but reduced her hours in recent

---

[1] Foch initially alleged disability onset on January 1, 2006, but she worked at an SGA level until 2010 and amended, at the hearing, to the date of filing, April 13, 2010.

[2] Foch was still employed part-time as a housekeeper at the time of her administrative hearing.

years because of her alleged pain.   (R. 35-36).

Foch's history of alleged work related medical issues dates back to March 2010.   At that time, she stated, during an appointment with her treating physician, Daniel Lee, M.D., that working "full time" was getting "harder and harder" and she was unable to lift greater than 50 pounds.   (R. 249). Dr. Lee advised Foch to not lift greater than twenty pounds. Foch had an X-ray of her lumbar spine on May 24, 2010, which showed only minimal degenerative changes. (R. 303).

William Massey, M.D., an agency physician, conducted a physical examination on August 4, 2010.   (R. 282).   He noted that Foch was taking medication for high blood pressure (Lisinopril; Clonodine), asthma (ProAir; Albuterol), menopausal symptoms (Prempro), Anxiety (Xanax), arthritis of feet (meloxicam), and reflux indigestion (Zantac). (R. 282).

Dr. Massey noted that Foch reported being in seven car accidents since 1979.  Id.  Nevertheless, she had only mild limitation of motion of the shoulder. Id. [3]  Foch stated to Dr. Massey that she worked performing cleaning and janitorial services 35 to 40 hours per week. (R. 283).   Foch further stated that she worked fewer hours in the winter months, because fewer

---

[3] In one accident, in 1979, she fractured her right shoulder, was hospitalized and had surgery with a "very good result." As a result she only has mild limitation of motion of the shoulder. "There is no tenderness on manipulation of movement, though she has mild limitation of internal and external rotation and adduction. Other than that, she has 4/5 strength of the upper right extremity." (R. 282)

people are in hotels. Id. Upon Examination, Dr. Massey found there were absolutely no arthritic changes. Id. He noted that despite the fact that she was prescribed medication for arthritis in her feet, he did not find any sign of tenderness, arthritis, or swelling. Id. Dr. Massey also noted that she smokes a pack of cigarettes a day and "will not stop."[4]

Dr. Massey confirmed that Foch does have high blood pressure, which she was diagnosed with in 2009. (R. 284) He also reported that she has had asthma intermittently for twenty years, has gone through menopause and experiences menopausal sweats at night, has had anxiety for 10 years, and has reflux esophagitis. Id.

With regard to Foch's physical limitations, Dr. Massey found that Foch has no trouble kneeling, cleaning bathtubs, or reaching under beds to dust. (R. 288). He further found that she can sit for thirty to forty-five minutes and then her low back gets stiff and she gets up and moves around. Id. She can stand on her feet for hours, but her feet hurt at the end of the day. She can walk one or two miles per day without difficulty. Id. She can bend, squat, lift twenty to twenty-five pounds and use her hands without difficulty. Id. She can also climb stairs without difficulty. Id. She drives her own car. She does her own

---

[4] At Foch's Administrative Hearing, she stated she now only smokes four to five per day. (R. 38)

shopping, bathing, dressing, cooking, cleaning, and gardening. Id. Dr. Massey placed her impairment as defined by the Federal Dictionary of Occupational Titles ("DOT") as a Class III, slight limitation of functional capacity. (R. 285).

On September 23, 2010, Foch returned to her treating physician, Dr. Lee, with complaints of chest pain and shortness of breath. (R. 312). She was referred to a cardiologist. The cardiologist, Nauman Naseer, M.D., ordered further testing including an echocardiogram, which revealed only mild to moderate aortic regurgitation. The cardiologist reinforced smoking cessation (R. 296-97).

Foch had two appointments in 2011 with Christian LaFalce, M.D., a treating physician, with regard to her COPD. (R. 328, 334). At her April 27, 2011 visit, Dr. LaFalce noted that Foch had normal range of motion and no tenderness. (R. 336) Though difficult to interpret, Dr. LaFalce's notes from Foch's first visit suggest she had markedly diminished pulmonary capacity. Id. Dr. LaFalce also spoke with Foch about smoking cessation and noted that Foch said she was "trying." (R. 334). At her May 17, 2011 visit, Dr. LaFalce noted that Foch still had normal range of motion and no tenderness, but still had "diminished" pulmonary capacity. (R. 329). Foch described herself as doing well since her last visit. She denied significant shortness of breath, wheezing or chest pain. (R. 328). She reported taking

5

her medications regularly and had no need for rescue inhaler. Id. She continued to smoke. Id.

Foch continued to see Dr. Lee regularly, but his records are difficult to interpret and neither counsel has offered a translation. (R. 345-53; reflecting five visits in 2011). As far as the Court can determine, Dr. Lee followed Foch for dyspnea (difficulty breathing), COPD, and anxiety, which he generally controlled well with medication. Id. None of his records appear to document any restrictions in her range of motion, ability to lift weight, stand, or walk. Id. On May 17, 2011, a complete pulmonary function test, administered by Dr. Naga S. Chigurupati, revealed normal lung volumes and normal or moderately reduced breathing capacity. (R. 344). She was diagnosed with moderate obstructive lung disease. (R. 344). At an appointment with Dr. Lee on November 29, 2011, he reported that Foch was able to touch her fingers to her toes. (R. 345).

Foch had an earlier visit with Dr. Lee on May 2, 2011, during which he completed a check-the-box form, provided by Foch's attorney. The form states that Foch suffered from hypertension, hyperlipidemia, low back pain, COPD, and anxiety. The form further notes that she: (1) could only stand or walk for 10 minutes without severe pain; (2) could only sit continuously for 30 minutes without severe pain; (3) could frequently lift less than ten pounds, occasionally lift ten

pounds, rarely lift twenty pounds, and never lift fifty pounds; and (4) if employed for forty hours per week, would need to sit for fifteen minutes three times to rest or recover from her pain and symptoms. (R. 325).

Foch's medical records were reviewed by state agency physicians Carolina Longa, M.D. and Robert Castle, M.D. (R. 48 and 60). Both Dr. Longa and Dr. Castle found that Foch could: (1) occasionally lift fifty pounds and frequently lift twenty-five pounds; (2) stand or walk for a total of six hours in an eight-hour work day or sit for a total of six hours in an eight-hour work day; and (3) she should "avoid concentrated exposure" to "fumes, odors, dusts, gas, poor ventilation, etc." (R. 55-56 and 69-70). Both found, based on their review of Foch's medical records that she had the Residual Functional Capacity ("RFC") to perform her past relevant work, which they identified as housekeeping. Id.

Foch testified at the hearing that she was still working, cleaning resort condominiums. (R. 35). She indicated that her responsibilities included: (1) making beds; (2) cleaning windows with Windex; (3) cleaning bathrooms; and (4) sweeping floors. (R. 42) She testified that she only worked on Friday, Saturday and Sunday because that is the only busy time at the resort and if she works more than that she gets really sore, because of her history of car accidents. Id. She testified that her shoulders

both hurt and she cannot lift [her arms] when she is making beds. (R. 36). She testified that she has had some dental problems. (R. 36, 37). She further testified that she had anxiety, elaborating that she screams, cries, and gets angry a lot. (R. 37). She testified that she smoked four to five cigarettes per day. (R. 38). She testified that she had two different inhalers she used to help her breathe. (R. 39-40). She affirmatively answered her attorney's question that she had shortness of breath when traveling up stairs. (R. 40). She testified that she sometimes took nine 500 mg ibuprofen tablets per day on both work and non-work days. (R. 41, 44). She testified that for every thirty minutes she works she has to rest for about ten minutes. (R. 42). She further testified that after a full shift, her back really hurt and she would just lie on the couch. (R. 44).

The Vocational Expert ("VE") also testified at Foch's hearing. He testified that he considered her work as that of a housekeeper, as described in DOT title 323.687-014, light and unskilled. (R. 45). He also denoted a brief period working in fast food, which was also light and unskilled work. Id. In response to Foch's attorney's question as to whether the duties of a housekeeper, according to DOT 323.687-014, could be performed if a person needs to be able to sit for up to two hours out of an eight hour work day, the VE testified that in

his opinion it would require an accommodation. (R. 46). After similar questioning regarding a fast food worker, the VE testified that a person who had to sit twenty-five percent of the day would not be able to perform the necessary duties of these two positions. Id.

The ALJ determined from the record that Foch had two severe impairments: (1) chronic obstructive pulmonary disease (COPD) and anxiety. (R. 18). All other alleged impairments could not be considered severe because they did not exist for a period of at least twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous extertional or nonextertional functional limitations. Id. After considering the limitations produced by all her impairments, the ALJ found that Foch has the RFC to perform light work, so long as that work consists of performing "simple, routine, and repetitive tasks." (R. 19).

In describing the weight he assigned to all of the opinion evidence, the ALJ noted that he gave the DDS medical consultants moderate weight, because their opinions were not as consistent with the evidence as a whole.[5] (R. 21). He gave the opinion of the examining consultant, Dr. Massey great weight, because his opinion was most consistent with the evidence as a whole.  Id. He gave the opinions of Dr. Lee little weight, because his

---

[5] The DDS medical consultants are Dr. Longa and Dr. Castle.

findings appeared to be largely based on the subjective complaints of Foch. The ALJ also relied upon the VE's testimony, who described Foch's past housekeeping work as "light and unskilled" work. The ALJ then determined that despite Foch's impairments, she maintains the ability to perform her past relevant work as it is generally performed in the national economy. Id.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its

judgment for that of the Commissioner. _Craig v. Chater_, 76 F.3d 585, 589 (4th Cir. 1996); _Hays_, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." _Craig_, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. _Perales_, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. _Coffman v. Bowen_, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as the:

> Inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A).   To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.   20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled.   The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit her or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing her or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no

disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

A.   The ALJ's Decision

In this case, after first finding that Foch met the insured status requirements of the Social Security Act through December 31, 2015, the ALJ made the following findings under the five part analysis: (1) Foch engaged in substantial gainful activity (SGA) from April 13, 2010, her alleged onset date, through December 31, 2010, however there has been a continuous twelve-month period, beginning January 1, 2011, during which the

13

claimant did not engage in SGA; (2) she had severe impairments COPD and anxiety; (3) she did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in Appendix 1; (4) Foch had the RFC to do light work, limited to simple, routine, and repetitive tasks; and considering the physical and mental demands of Foch's past relevant work, as a housekeeper, she could perform it as it is generally performed in the national economy. (R. 15-22).

Foch's Motion for Summary Judgment argues the ALJ erred in evaluating the medical evidence, and by failing to consider the opinion of DDS medical consultants who suggested she limit her exposure to fumes, odors, and gasses. She also argues the ALJ incorrectly resolved the case at step four by concluding Foch could perform past relevant work. This Report will address each claim in turn.

## B.  The ALJ properly evaluated the evidence bearing on Foch's RFC.

Foch first contends that the ALJ erred in determining her RFC, which is defined as the plaintiff's maximum ability to work despite her impairments.  20 C.F.R. § 404.1545(a)(1); see SSR 96-9p, 1996 WL 374185 (S.S.A.) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis.").  When a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential

14

analysis, the ALJ must then determine the plaintiff's RFC.   20 C.F.R. § 404.1520(e).   After doing so, the ALJ uses that RFC at step four of the sequential analysis to determine whether the plaintiff can perform her past relevant work.   Id. at § 404.1545(a)(5)(i).   If it is determined that the plaintiff cannot perform past relevant work, the ALJ uses the RFC at step five to determine if the plaintiff can make an adjustment to any other work that exists in the national economy.   Id. at 404.1545(a)(5)(ii).

At the administrative hearing level, the ALJ alone has the responsibility of determining RFC.   Id. at § 1546(c).   RFC is determined by considering all the relevant medical and other evidence[6] in the record.   Id. at §§ 404.1545(a)(3) and 404.1527(b).   Relevant evidence includes "information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite her or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources."   SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.).   In this case, the ALJ found that Foch has the RFC to perform light work with the added limitation to work involving simple, routine, and repetitive tasks.

---

[6] "Other evidence" includes statements or reports from the claimant, the claimant's treating or non-treating source, and other about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptoms affect the claimant's ability to work.  20 C.F.R. § 404.1529(a).

Foch argues that the ALJ erred by improperly evaluating the evidence, including the medical source statement submitted by her treating physician, Dr. Lee. Foch highlights Dr. Lee's medical opinion of May 2, 2011, which found that Foch was too limited to work full-time. (ECF No. 10 at 4).

The ALJ must consider the objective medical evidence in the record, including the medical opinions of the treating physicians and the non-examining medical consultants. In assigning weight to any medical opinion, the ALJ must consider the following factors: (1) "[l]ength of treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the record; and (5) the specialization of the physician. 20 C.F.R. § 404.1527.

Generally, the opinion of a treating physician is given more weight than that of a non-treating or non-examining medical source. Id. at § 404.1527(d)(1)-(2). A treating physician's opinion merits "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. at § 404.1527(d)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly

16

less weight." <u>Craig</u>, 76 F.3d at 590.

Because the regulations require the ALJ to evaluate every medical opinion, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in [the regulations]." SSR 96-2P, 1996 WL 374188, at *5 (S.S.A.).   When the ALJ determines that the treating physician's opinion should not be given controlling weight, the ALJ must articulate "good reasons" for her decision. <u>Id.</u> at § 404.1527(d)(2).[7]

Here, the ALJ gave little weight to Dr. Lee's findings that Foch: (1) could lift twenty pounds "rarely," [ten][8] pounds "occasionally," and less than ten pounds "frequently;" (2) should sit for no more than thirty minutes at a time and stand/walk for no more than ten minutes at a time; and (3) would need three unscheduled breaks lasting for at least fifteen minutes each during an eight-hour day.   In doing so, he explained that these findings were based mainly on Foch's subjective complaints of pain, fatigue, and shortness of breath, as the recommendations do not appear to be consistent with the

---

[7] In fact, under the applicable regulations, the ALJ is required to "explain" in her decision the weight accorded to <u>all</u> opinions - treating sources, non-treating sources, state agency consultants, and other non-examining sources. 20 C.F.R. § 404.1527(f)(2)(ii).

[8] In citing R.325 (Exhibit 12F), the ALJ mistakenly typed twenty pounds a second time, but R. 325 states that Foch can left ten pounds - not twenty - "occasionally."

documented improvement of Foch's lung condition, the treatment she has been receiving for anxiety, or with the findings of the examining physician. The ALJ specifically observed that Dr. Lee's findings differed from "the test results [and] with the documented improvement in the claimant's pain with the use of medications." (R. 21).

After reviewing the complete record and the ALJ's analysis, the undersigned finds no error in the weight assigned to Dr. Lee's medical source opinion. The statement Foch relies upon is not a medical record prepared as part of Dr. Lee's treatment. In fact, Dr. Lee's medical records contain little evidence of any orthopedic condition that might limit her ability to lift weight or stand. His specially prepared source statement contains no space for elaboration on the reasons for Foch's claimed limitations. Such check-the-box forms, unaccompanied by explanations are weak evidence at best, and not entitled to great weight even when completed by a treating physician. McConnell v. Colvin, 2:12cv5, 2013 WL 1197091, at *6 (W.D. Va. Mar. 25, 2013) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)).

Here, as the ALJ noted, Foch's medical records document a history of COPD, anxiety, and some minor shoulder problems. Her shoulder problems mostly derive from a series of car accidents she has been involved in over the years. However, there is no

significant medical evidence to show that her shoulder condition is still a serious impairment. While her COPD and anxiety have been determined to be severe impairments, there is no medical evidence in the record explaining why they would prevent her from performing her past relevant work, as a housekeeper, as it is generally performed in the national economy, which by Foch's own description entailed simple, repetitive, low-stress tasks.

Foch also claims the ALJ's decision did not consider or weigh the DDS medical opinions, in particular their conclusion that she avoid exposure to fumes, dust, odors, and gasses. (ECF No. 13 at 3). In fact, her brief asserts that the ALJ "never" references the DDS medical opinions at both the application and reconsideration stages and that "the literal existence of those medical opinions are absent from the ALJ's decision." Id. This is incorrect.

A claimant's RFC is determined by considering all the relevant medical and other evidence in the record and the weight assigned to an opinion is in part determined by how consistent it is with the medical record. "Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs," the ALJ is required to consider their factual determinations about the "nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and

psychologists." SSR 96-6P. While the ALJ is not bound by these findings, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Id. The opinion of a non-examining, non-treating physician, in turn, can be relied upon when the opinion is consistent with the record. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Additionally, "[w]hen the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence." Armentrout v. Astrue, 3:10CV504, 2011 WL 4625931, at *4 (E.D. Va. June 2, 2011), report and recommendation adopted, 3:10CV504, 2011 WL 4625912 (E.D. Va. Oct. 3, 2011).

In his opinion, the ALJ states that, "the opinions of the DDS medical consultants regarding the claimant's physical abilities are given moderate, but not great weight because another medical opinion is more consistent with the evidence as a whole." (R. 21). This sentence was followed by a direct citation to the medical consultants' records, which Foch claims were ignored. So, not only did the ALJ reference the DDS medical opinions, he gave weight to them and explained his decision. Id. Further, the amount of weight given to the DDS medical consultants' opinions was appropriate, because Dr. Massey was an

examining physician, who performed detailed clinical measurements of Foch's abilities. The DDS non-examining medical consultants, by contrast, merely reviewed Foch's medical records. Id. Dr. Massey's opinion was given significant weight because it was more consistent with the other evidence. Id.

Foch next argues that the ALJ erred because the DDS consultants' opinions stated that Foch should not have concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc." and the DOT provides that a housekeeper works around pulmonary irritants. (ECF No. 13 at 3). Specifically, Foch's brief alleged that DOT Code No. 323.687-010, corresponds with a position which she claims requires the occupant to work around pulmonary irritants. Id.

There are two problems with Foch's argument on this point. First, the DOT number referenced by Foch in her brief is different from the DOT code number referenced by the ALJ in his opinion. Second, neither DOT job description provides that a person employed as a housekeeper, will experience "concentrated exposure" to any sort of pulmonary irritant.

The ALJ relied on the VE's testimony that a housekeeper is classified as "light unskilled work," which was supported by DOT Code No. 323.687-014. (R. 22). The referenced job is titled, "Cleaner, Housekeeping (any industry)." (DOT Code No. 323.687-014). Foch, in her reply brief, references an entirely

different DOT Code Number, 323.687-010, titled, "Cleaner, Hospital (medical ser.)." (ECF No. 13 at 3) and (DOT Code No. 323.687-010). Not only is this DOT code number, different from that on which the ALJ relied, there is nothing in the record to indicate that Foch ever worked as a housekeeper in the medical field.

The DOT code number referenced by the ALJ, 323.687-014, does not mention anything about a housekeeper's concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc." (DOT Code No. 323.687-014). Further, it does not even mention exposure to any pulmonary irritant. Id. Even the medical housekeeping job referenced by Foch in her reply, states only that the occupant: "may sterilize equipment and supplies, using germicides and sterilizing equipment." (DOT Code No. 323.687-010). Neither states that a housekeeper will be subject to "concentrated exposure" to fumes, odors, dusts, gases, poor ventilation. As a result, the ALJ's failure to incorporate such a restriction in Foch's RFC would not affect his conclusion on available work.

C.  **The ALJ correctly determined that Foch can perform her past relevant work on a full-time basis.**

Foch also argues that the ALJ erred by presuming her past relevant work would be considered light, unskilled work within

the limits of her RFC. (ECF No. 10 at 5). She argues that the ALJ should not have presumed that all unskilled light jobs are the same, and erred if he meant for his light RFC to limit standing and walking to not more than six hours because such a restriction would preclude past work as a housekeeper. Id. In this case however, the ALJ did not impose any limit on Foch's ability to stand, nor does it appear any was warranted by the evidence.

In the case Foch cited to support this argument, El v. Colvin, 2:13-cv-181 (E.D. Va. Sept. 20, 2013) (unpublished Order), this court did remand (without objection) a decision denying benefits when the ALJ had determined the claimant's RFC was for light work with a further limitation on standing and walking up to six hours in an eight-hour day. No such limitation was imposed in this case. (R. 19). Here, the ALJ determined that that Foch's RFC was to perform light work with the only further limitation being that the claimant can perform only simple, routine, and repetitive tasks. Id.

Foch suggests, nonetheless, that the ALJ's finding may include an unstated standing and walking limitation, as she asserts that light work is "generally defined" by the regulations and the DOT to limit standing and walking to no more than six hours. (ECF No. 10 at 6).

In fact, The SSR definition of "light work" provides:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

SSR 83-10. Frequent is defined as, "occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Id.

Foch alleges that because the "frequent" lifting and carrying required by light work necessitates being able to stand or walk approximately six hours of an eight-hour work day that suggests her light RFC permits a maximum of six hours standing. In fact, the opposite is true. The definition of "frequent" in the context of a claimant with an RFC for the full range of light work requires standing a minimum of six hours in an eight-hour work day. However, like Foch, some can stand longer than six hours. In other words, in order to do the full range of

24

light work, a person must be able to stand at least six hours in an eight-hour work day. In fact, as Foch herself concedes, many light jobs require standing or walking for greater than six hours in an eight hour day. (ECF No. 10 at 6). The ALJ determined that Foch can stand for at least six hours in an eight hour work day, but he did not limit her standing to only six hours, as she now argues. (R.19). Further, the non-extertional limitation of "simple, routine and repetitive tasks" has no bearing on Foch's ability to sit or stand. Id.

Although the VE testified in response to counsel's hypothetical that a person with a six-hour per day work limitation would require an accommodation in order to perform standard duties of Foch's past relevant work as a housekeeper, her RFC, as determined by the ALJ, did not include any such limitation. (R. 19). Therefore, the fact that the VE testified that a hypothetical person with a six-hour limitation on walking or standing would require an accommodation to work as a housekeeper has no bearing on Foch's case. Any limitations on her ability to sit or stand were de minimis as shown by the Agency examiner.

In Foch's case, the VE was called to make a vocational assessment of Foch's past work. The VE described that her past work was aligned with DOT Title 323.687-014, "light and unskilled." The ALJ, based on the VE's testimony, was therefore

able to determine that Foch could perform her past relevant work as it is usually performed in the national economy. In addition, Foch — who was still working at the time of the hearing — described her work in detail to the ALJ. Her briefs have not pointed to any aspect of her work which would be precluded by her RFC. (R. 33-44; ECF Nos. 10 and 13).

Finally, Foch argues that her mental impairments required the ALJ to obtain a precise description of the particular job duties which are likely to produce tension and anxiety. (ECF No. 3). She suggests that the ALJ should have obtained a description of the "speed, precision, complexity of tasks, independent judgments, working with other people, etc." (ECF No. 3, citing Welch v. Chater, 923 F.Supp. 17 (W.D.N.Y. 1996)).

This case differs from Welch in two important ways. First, in Welch, there is no record of a VE testifying at all. See generally Welch, 923 F. Supp. at 20. Moreover, in Welch, the ALJ found that the claimant had a variety of severe mental impairments resulting from depression, a personality disorder, a history of alcoholism, and anxiety. Id. at 19. In this case, Foch's only severe mental impairment was determined to be anxiety. (R. 19).

The ALJ addressed Foch's severe anxiety in crafting her RFC by including the limitation that the light unskilled work she would be performing also must be "simple, routine, and

repetitive tasks." (R. 19). As with her physical limitations, Foch has not identified any inconsistency between these limits and her past relevant work as a housekeeper. Accordingly, the ALJ properly considered her anxiety when crafting her RFC and concluded that she was not disabled.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court GRANT the Commissioner's motion for summary judgment (ECF No. 11), DENY Foch's motion for summary judgment (ECF No. 9), and affirm the final decision of the Commissioner.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

27

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

June 17, 2014